No. 12-16742

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TIFFANY BLADES,

*Plaintiff-Appellant,*

v.

WELLS FARGO BANK, N.A., *a foreign corporation*; FEDERAL HOME LOAN MORTGAGE CORPORATION dba FREDDIE MAC, *a governmental sponsored enterprise*; MTC FINANCIAL, INC. dba TRUSTEE CORPS, *a foreign corporation*; DOES I through X, *inclusive*; ROE CORPORATIONS I through X, *inclusive*,

*Defendant-Appellees.*

On Appeal from the United States District Court
District of Nevada
Before the Honorable Kent J. Dawson
[District Court No. 2:11-cv-01389-KJD-CWH]

**APPELLANT'S REPLY BRIEF**

Jamie S. Cogburn, Esq.
Nevada State Bar No. 008409
COGBURN LAW OFFICES
jsc@cogburnlaw.com
2879 St. Rose Parkway, Suite 200
Henderson, NV 89052
Tel: (702) 384-3616
Fax: (702) 943-1936
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

INTRODUCTION……………………………………………….....  1

I.  Appellees Agreed to Provide a Loan Modification When They Offered the Forbearance Agreement and They Accepted Blades' Payment of $3,500.00, Only to Breach Their Obligations Under the Terms of the Agreement………………………………  2

   A. 12 U.S.C. § 1701j-3(d) – Exceptions to the Enforcement of Due-on-Sale Clauses……………………….  4

   B. N.R.S. 134.090: No surviving spouse but issue…………....  5

   C. Appellees' Arguments Run Contrary to Statutory Law…...  5

II. Under the Principles of Equity, the Promissory Estoppel and Unjust Enrichment Claims Hinge on the Appellees' Promise to Provide a Loan Modification, which Plaintiff Reasonably Relied on By Providing $3,500.00…………………………………….  8

III. Appellees as a Lender and Servicer Owed a Duty of Good Faith to Blades as a Special Relationship Existed When the Latter Relied on the Former to Uphold the Forbearance Agreement, which Appellees Breached by Acting Unfaithfully to the Purpose of the Agreement……………………………………………...  9

IV. As in the Breaches of the Covenant of Good Faith and Fair Dealing, Appellees Intentionally or Negligently Misrepresented Their Role in the Foreclosure Proceedings with Fraudulent Claims Specifically Identified in the Opening Brief…………………..  12

CONCLUSION…………………………………………………………  13

Case: 12-16742    01/14/2013    ID: 8473426    DktEntry: 22    Page: 3 of 19

# TABLE OF AUTHORITIES

## CASES
*In re Alexander*,
2007 WL 2296741 (Bankr. N.D. Fla. 2007)     4

*In re Cady*,
440 B.R. 16, 20 n. 9 (Bankr. N.D.N.Y. 2010)     4

*Central States Stamping Co. v. Terminal Equipment Co.*,
727 F.2d 1405 (6th Cir. 1984)     10

*Citicorp Mortg. V. Lumpkin*,
144 B.R. 240, 241 (Bankr. D. Conn. 1992)     4

*Giles v. General Motors Acceptance Corps.*,
494 F.3d 865 (9th Cir. 2007)     10

*Guertin v. Nationstar*,
2:11-CV-01167-GMN, 2012 WL 163816 (D. Nev. Jan. 18, 2012)     10

*Mackintosh v. Jack Matthews & Co.*,
109 Nev. 628, 855 P.2d 549 (1993)     10

*Perry v. Jordan*,
111 Nev. 943, 900 P.2d 335, (1995)     10

*Transaero Land & Dev. Co. v. Land Title of Nevada, Inc.*,
108 Nev. 997, 842 P.2d 716 (1992)     8-9

## STATUTES

12 U.S.C. § 1701j-3(d)      4-5

N.R.S. 134.090      5

## OTHER AUTHORITIES

*Fannie Mae, Single Family Servicing Guide* § 408.02 (Jan. 31, 2003)      3

**INTRODUCTION**

This case is about a lender that misled a borrower by accepting money in exchange for its promise to prevent foreclosure, which the lender nonetheless ensured would and did occur. Appellees oversimplify this case. Appellees suggest there are only two possible outcomes, either: (1) there is an individual who is not an obligor to a mortgage that must be foreclosed upon or (2) a borrower who did not make her payments, and thusly had her home foreclosed upon.

Appellees, however, in their version of the facts do not account for the meaning and value of the Forbearance Agreement they offered to Blades, her submission of this Agreement, their acceptance of her $3,500.00 cashier's check, their inconsistent classification of Blades as either not a party to the mortgage or at other times an obligor of the mortgage, the value and meaning of the "Alternatives to Foreclosure" sent to Blades, the premature recordings of Notices of Default and Trustee's Sale and the problematic roles they play as both the servicer/lender and the controlling entity over whether her home is foreclosed upon.

Appellees offer unsubstantiated factual allegations and legal conclusions: (1) Blades was not the successor-in-interest to decedent's mortgage agreement (Appellee's Answering Brief, AB 9); (2) decedent breached the mortgage by conveying her property to her daughter upon her death (AB 9-10); (3) Blades failed to do equity by making a payment for which Appellees guaranteed protection to

1

her property(AB 12); (4) Appellees did not contravene the spirit of the contract (AB 14); (5) no special relationship exists when Appellees encouraged by mail and by agreements for Blades to entrust them when they had the power to foreclose upon her property (AB 17-18); (6) Wells Fargo owes no duties to a borrower to whom they send Agreements to be signed (AB 17-18); and (7) at no point in the Answering Brief, do Appellees explain why Wells Fargo accepted $3,500.00 from Blades, and then refused to accept subsequent payments.

In their lengthy attempts to make Blades look like an irresponsible borrower, Appellees provide circular arguments and factual allegations which are contrary to common sense and should not withstand scrutiny. Thus, Plaintiff-Appellant respectfully requests this Court to reverse the ruling of the District Court and remand with instructions.

### I. Appellees Agreed to Provide a Loan Modification When They Offered the Forbearance Agreement and They Accepted Blades' Payment of $3,500.00, Only to Breach Their Obligations Under the Terms of the Agreement.

Blades' breach of contract claims for dispossessing Blades of her rights to her property are based on the following facts. For the first claim, decedent conveyed her Property to Blades by a grant, bargain and sale deed, and Blades assumed the mortgage. As for the second claim, in an honest attempt to pay the mortgage she inherited, Blades and Wells Fargo entered into a Forbearance Agreement of which Wells Fargo violated the terms.

2

Appellees provided in their defense the following self-serving version of the facts. First, Blades was not the successor-in-interest to the decedent's mortgage agreement, decedent breached the loan agreement when she "quitclaimed" the property to Blades, and Blades did not make payments. Second, the Forbearance Agreement was not a contract because Wells Fargo never executed it (AB at 8-9).

First, while quitclaim deeds are mostly similar to grant, bargain and sale deeds. These two forms of conveying property have a stark and pertinent difference: the grant, bargain and sale deed is always an assumption that the grantor actually possesses and is able to convey the property, and thus, the grantor actually conveys the land, not just interests, to the grantee. Thus, Blades becomes the successor-in-interest to the decedent's mortgage agreement upon the conveyance of the property by a grant, bargain and sale deed.

Appellees argue that loan agreement contained a Due-on-Sale Clause. Appellees refer to Section 18 of the Deed of Trust, which provides that the "Lender may require immediate pay in full" if the Borrower transfers title. (AB 8-9) Appellees argue that because of this provision to convey title would be a breach of this agreement by the decedent. However, because the due-on-sale clause is the only mechanism a servicer has to block the assumption of the mortgage by a new owner, servicers must allow assumptions that fall within provided exceptions. *Fannie Mae, Single Family Servicing Guide* § 408.02 (Jan. 31, 2003).

3

### A. 12 U.S.C. § 1701j-3(d) – Exceptions to the Enforcement of Due-on-Sale Clauses.

The 1982 federal Garn-St. Germain Act, which preempted state laws forbidding the enforcement of due-on-sale clauses, provided exception to the enforcement of due-on-sale clauses:

> A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by entirety; [or] … a transfer to a relative resulting from the death of a borrower; [or] … a transfer where the spouse or children of the borrower become an owner of the property; [or] a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property… 12 U.S.C. § 1701j-3(d)(3), (5), (6), (7).

In *In re Alexander*, the Court held that under 12 U.S.C. § 1701j-3 the lender was not able to exercise its option pursuant to the "due-on-sale" clause when the transfer was to a relative resulting from the death of the borrower, or under 12 U.S.C. § 1701j-3(5) and (6), when the spouse or children of the borrower become the owner of the property. The servicer was not able to exercise its option to accelerate the mortgage and note. *In re Alexander*, 2007 WL 2296741 (Bankr. N.D. Fla. 2007). *See also In re Cady*, 440 B.R. 16, 20 n. 9 (Bankr. N.D.N.Y. 2010) and *Citicorp Mortg. V. Lumpkin*, 144 B.R. 240, 241 (Bankr. D. Conn. 1992).

4

**B. N.R.S. 134.090: No surviving spouse but issue.**

In addition, under N.R.S. 134.090, No surviving spouse but issue, "If the decedent leaves no surviving spouse, but there is a child or children, the estate, if there is only one child, all goes to that child. If there is more than one child, the estate goes to all the children of the decedent, to share and share alike."

Thus, under 12 U.S.C. § 1701j-3 and N.R.S. 134.090, Appellees should not be allowed to exercise its option to accelerate the mortgage. Blades became the rightful successor-in-interest when the decedent conveyed the property to her. The property conveyed is unique property with containing enough space and resources for horses. Furthermore, when Wells Fargo accepted Blades' payment of $3,500, Wells Fargo was aware that the decedent had passed away.

Thus, denial of Blades' subsequent attempts to make payments on grounds relating to successor-in-interest issues does not stand under 12 U.S.C. § 1701j-3 and N.R.S. 134.090, as well as Wells Fargo's own behavior.

**C. Appellees' Arguments Run Contrary to Statutory Law.**

Appellees' arguments in the Answering Brief do not overcome these statutory grounds that support Blades' claims.

Beginning in February 2009, Appellees failed to recognize Blades as the successor-in-interest for the mortgage,[1] and thusly froze her account and refused to accept any payments from her. Blades recorded the property in her name the day after decedent's passing. Blades made numerous attempts to contact Wells Fargo to establish communication and a forbearance agreement or loan modification. When such attempts to make payments were made, Wells Fargo refused them on the wrongful basis that she was not the obligor, thereby placing the mortgage in default and setting up the Notice of Default which was eventually sent to Blades on July 12, 2009.

Likewise, Appellees argument that the Forbearance Agreement was never executed does not stand. On or around October of 2010, after Blades found employment, Wells Fargo placed Blades in a forbearance period during which time Wells Fargo represented that it would not take any adverse action to dispossess Blades of the Property. In order for the Forbearance Agreement to take effect, and for the purpose of ensuring that her property would receive the promised protection against adverse actions, Blades provided $3,500.00 to reinstate the mortgage. After Wells Fargo accepted payment of $3,500.00, Wells Fargo stopped accepting subsequent payments, stopped recognizing Blades as obligor of the mortgage, and

---

[1] Defendant-Appellees again their Answering Brief claim that Blades was not the obligor on the mortgage as they did back on 2009, and yet as seen in ER 243-245, v. 2, Defendant-Appellees are on record conceding Blades' status as obligor of the mortgage.

6

eventually the trustee sale occurred.  **<u>Wells Fargo stopped accepting payments from Blades over a year after the decedent's passing</u>**.

Appellees' arguments on this point just become further confusing and self-serving.  Defendant-Appellees artfully misconstrue the nature of the situation by arguing that "[e]ven *less than a month* after the parties purportedly entered into the agreement, Wells Fargo did not accept payments tendered pursuant to that alleged agreement." (AB 10, n.3)  On the one hand, Appellees argue that her failure to pay was a breach, and that Wells Fargo's non-acceptance of her payments was merely emblematic that no contract or forbearance agreement existed.  And yet, on the other hand, Appellees acknowledge that the reinstatement fee was $6,360.89, but fail to appreciate the significance of Wells Fargo's denial of subsequent payments after Blades put down $3,500.00 to ensure that Appellees would secure the property from any adverse actions, such as foreclosure.

Wells Fargo must be stopped from tricking borrowers like Blades into contracts containing promises they will fulfill, which they then fail to perform.  Wells Fargo's breaches of contracts by their own acts and omissions have directly and proximately caused Blades to suffer the loss of the home she grew up in, the home her mother lived in to old age and left for her daughter.

7

**II.    Under the Principles of Equity, the Promissory Estoppel and Unjust Enrichment Claims Hinge on the Appellees' Promise to Provide a Loan Modification, which Plaintiff Reasonably Relied on By Providing $3,500.00.**

Appellees argued that the Blades cannot show that there is a clear, definite promise capable of enforcement because the terms of the Forbearance Agreement were merely to *postpone* the pending foreclosure sale, and not *cancel* it, and that Blades is not entitled to equitable relief because she did not provide equity (AB 10-12, 19-20).

Again, Appellees offered a self-serving characterization of the facts. Appellees argued that instead of promising to take no adverse actions against the property, the Forbearance Agreement "unequivocally states otherwise." (AB 12) And yet, Appellees acknowledged that the Forbearance Agreement requires that Wells Fargo is to postpone the foreclosure sale (AB 11). Certainly, a promise to postpone a foreclosure sale is a promise capable of enforcement, the first element of promissory estoppel that Appellee claimed does not exist.

Appellees then argued that Blades is not entitled to equitable relief because she failed to do equity herself (AB 12). In *Transaero*, Land Title was obligated to reconvey the deed of trust upon Transamerica's tender of final payment on the note. *Transaero Land & Dev. Co. v. Land Title of Nevada, Inc.*, 108 Nev. 997, 1000-02, 842 P.2d 716, 718-19 (1992). After Transamerica tendered the $150,000.00 payment plus interest, Land Title refused the tender and counter-

8

demanded $190,000. *Id.* The Court decided, by failing to live up to their end of the agreement (clearing title for the agreed upon amount within 120 days), Land Title was not entitled to $40,000 plus interest from Transamerica, which the lower court had awarded under the principle of equity. *Id.* In other words, Land Title provided no equity in exchange for the extra $40,000.00 it demanded when Transamerica had already fulfilled their obligation. *Id*.

Wells Fargo took $3,500.00 as part of their agreement with Blades in exchange for no adverse actions against the home. Like Land Title who expected extra payment from Transamerica, Wells Fargo then changed the nature of the agreement by failing to accept subsequent payments by not recognizing Blades as the obligor of the mortgage. As a direct and proximate cause to Wells Fargo's actions and omissions, Blades suffered the loss of $3,500.00 and the home she grew up in, the home her mother lived in to old and passed on to her.

**III. Appellees as a Lender and Servicer Owed a Duty of Good Faith to Blades as a Special Relationship Existed When the Appellant Relied on Wells Fargo to Uphold the Forbearance Agreement, which Appellees Breached by Acting Unfaithfully to the Purpose of the Agreement.**

Appellees argued that a lender or servicer *generally* owes no fiduciary duty to mortgage borrowers, and that Blades cannot assert a special relationship existed based on the Forbearance Agreements or Appellees as servicer of her mortgage (AB 12-15). By these factual allegations and the allegations Appellees put forth in

defense of the breach of contract claims, they attempt to undermine the claim for the contractual breach of the covenant of good faith and fair dealing claims.

While it is true that as a matter of law, *generally* a lender or servicer owes no fiduciary duty to mortgage borrowers, the Nevada Supreme Court recognized a fiduciary relationship exists "because of the specific actions and particular situations of the parties." *Giles v. General Motors Acceptance Corps.*, 494 F.3d 865, 882 (9th Cir. 2007). "Liability for breach of the good faith covenant exists where the party in a superior position has engaged in 'grievous or perfidious misconduct.'" *Guertin v. Nationstar*, 2:11-CV-01167-GMN, 2012 WL 163816 at *5 (D. Nev. Jan. 18, 2012) (internal citations omitted). A "duty to speak does not necessarily depend on the existence of a fiduciary relationship … 'It may arise in *any* situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Perry v. Jordan*, 111 Nev. 943, 947, 900 P.2d 335, 337 (1995) (*quoting Mackintosh v. Jack Matthews & Co.*, 109 Nev. 628, 635, 855 P.2d 549, 553 (1993) (*quoting Central States Stamping Co. v. Terminal Equipment Co.*, 727 F.2d 1405, 1409 (6th Cir. 1984) (emphasis added).

Appellees were in an entrusted position as they held the servicing rights to Blades' mortgage while simultaneously possessing the right to foreclose on the Property. Thus, Defendants were required to have the utmost integrity and put

forth good faith efforts to safeguard against inaccuracies, negligence, and/or wrongful conduct to avoid any adverse action taken against Blades that affected her rights to her Property.

Blades reasonably relied upon such documentation as the Forbearance Agreement by which Wells Fargo convinced Blades that during such forbearance period there would be no threat of foreclosure as long as she fulfilled her obligations. In addition, in their "Alternatives to Foreclosure" mailing with the heading "**re: Saving Your Property**", Trustee Corps, which worked on behalf of Wells Fargo, put at the top of the notice: "**WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!**"

Blades relied on Wells Fargo because they instilled confidence in Blades that it not only wanted her to keep her property, but that they could offer ways for her to keep her property. Thus, Blades reasonably relied on these notifications and messages from Wells Fargo and Trustee Corps, to the extent that she paid it $3,500.00 to reinstate the mortgage and to fulfill the Forbearance Agreement. Considering Wells Fargo turned around and foreclosed on the property at a time when it had guaranteed it would not indicates it intended all along to foreclose. Wells Fargo and Trustee Corps had no right to use any of the information pertaining to Blades and her home for their own advantage, which they did and accomplished.

As a direct and proximate cause to Wells Fargo's actions and omissions, Blades suffered the loss of $3,500.00 and the home she grew up in, the home her mother lived in to old and passed on to her.

### IV. Appellees Intentionally or Negligently Misrepresented Their Role in the Foreclosure Proceedings with Fraudulent Claims Specifically Identified in the Opening Brief.

Appellees argued that the fraud claims were not pled with the requisite particularity (AB 15). On the contrary, Appellant stated the following in the Opening Brief: The "'Alternatives to Foreclosure' sent by Trustee Corps to Blades dated July 6, 2009 misleadingly **set forth alternatives to foreclosure** including a forbearance plan, reinstatement plan, repayment plan option, and modification. **Six days later** Trustee Corps, as trustee on behalf of Wells Fargo, **recorded a Notice of Default on the Property**." (emphasis added). *See* ER 218-219, v. 2.

The Opening Brief identified in detail the following examples of Defendant-Appellees' fraudulent behavior: The reinstatement payoff plan that was sent to Blades just over a month after sending a Notice of Default in which Trustee Corps agreed to reinstate the mortgage if Blades paid $3,500.00, only to later reject all subsequent attempts at payment by Blades; Defendant-Appellees' notification of reasons for rejecting the payment attempts, including Blades was not listed on the mortgage, even though Wells Fargo had already sent mail identifying Blades as the obligor on the mortgage. ER 243-245, v. 2; The reference to the Forbearance

12

Agreement under which Wells Fargo assured Blades no adverse action on her Property would occur; Details of how Blades relied upon these representations by having a cashier's check for $3,500.00 written out to Wells Fargo, a sum that only a person with expectations of some goods or services would write under these circumstances; And lastly, how Wells Fargo accepted the $3,500.00 payment and then refused subsequent payments for which Trustee Corps then, in bad faith, placed a Notice of Default and Trustee's Sale on the Property. (Opening Brief, 24-27).

As a direct and proximate cause to Wells Fargo's actions and omissions, Blades suffered the loss of $3,500.00 and the home she grew up in, the home her mother lived in to old and passed on to her.

**CONCLUSION**

The Court should reverse the ruling of the District Court, which granted Defendants' Motions to Dismiss, and remand with instructions.

Dated:  January, 14, 2013

Respectfully Submitted,

/s/ Jamie S. Cogburn, Esq.
Jamie S. Cogburn, Esq.
Cogburn Law Off
2879 St. Rose Parkway, Suite 200
Henderson, NV 89052
Tel: (702) 384-3616
Fax: (702) 943-1936
*Attorney for Plaintiff-Appellant*

13

# CERTIFICATE OF COMPLIANCE

## Pursuant to Fed. R. App. P. 32(a)(7(C) and Circuit Rule 32-1
## For Case Number 12-16742

I hereby certify that pursuant to Fed. R. App. P. 32(a)(7(C) and Ninth Circuit Rule 32-1, the attached reply brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,015 words.

Dated January 14, 2013

                                          __/s/ Jamie S. Cogburn, Esq.____
                                        JAMIE S. COGBURN, ESQ.

9th Circuit Case Number(s): 2:11-cv-01389-KJD-CWH

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 01/14/2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format): /s/ Kristin Little

*******************************************************************************

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format):